**Charles W. KEMPE, Jr., et al.**

v.

**OCEAN DRILLING & EXPLORATION COMPANY, et al.**

Nos. 86–0352, 86–0891, 86–3535.

United States District Court,
E.D. Louisiana.

April 15, 1988.

Phelps, Dunbar, Marks, Claverie & Sims, Harry S. Rosenberg & James P. Reid, Harry S. Redmon, Jr. T.A., Richard N. Dicharry, New Orleans, La.; Davis, Polk & Wardwell, Paul R. Koepff, New York City, of counsel, David M. Spector, Ronald A. Jacks, Steven R. Gilford, James K. Meguerian, Bettina Getz, Mayer, Brown & Platt, Chicago, Ill., for Ocean Drilling & Exploration Co., and Murphy Oil Corp. Mentor Holding Co., Robert J. Sweeney, Hugh J. Kelly, James L. Kilpatrick and Tucker H. Couvillon, in No. 86–0352.

McGlinchey, Stafford, Mintz, Cellini, & Lang, Dermot S. McGlinchey, T.A., B. Franklin Martin, III, Maureen O'Connor Sullivan, New Orleans, La., for National Union Fire Ins. Co. of Pittsburgh Pa., in No. 86–0352.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, George A. Frilot, III, Roger A. Stetter, New Orleans, La., for William L. Colson, Ronald W. Herman, Clovis H. Steib, Odie F. Vaughan, in No. 86–0352.

Breazeale, Sachse & Wilson, Gordon A. Pugh, T.A., Claude F. Reynaud, Jr., Baton Rouge, La., for J. Douglas Higley, in No. 86–0352.

Montgomery, Barnett, Brown, Read, Hammond & Mintz, Stanley McDermott, III, New Orleans, La., Lord, Day & Lord, Michael J. Murphy, T.A., Laurie E. Foster, New York City, for plaintiffs, in No. 86–0891.

Phelps Dunbar Marks Claverie & Sims, Harry A. Rosenberg, T.A., & Harry S. Redmon, New Orleans, La., for Ocean Drilling & Exploration Co., Mentor Holding Corp., William L. Colson, Clovis H. Steib, Ronald W. Herman, Odie F. Vaughan, James L. Kilpatrick, Hugh J. Kelly, Herman S. Kelley, in No. 86–0891.

Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Robert E. Barkley, Jr., T.A., New Orleans, La., for Pinnacle Reinsurance Co., in No. 86–0891.

Breazeale, Sachse & Wilson, Murphy J. Foster, III, Gordon A. Pugh, T.A., Baton Rouge, La., for J. Douglas Higley, in No. 86–0891.

Isham, Lincoln & Beale, Ronald A. Jacks, David M. Spector, Steven R. Gilford/Paul W. Schroeder, Mayer, Brown & Platt, Chicago, Ill., for Ocean Drilling & Exploration Co., Mentor Holding Corp., Hugh J. Kelly, James L. Kilpatrick, in No. 86–0891.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, George A. Frilot, III, Roger A. Stetter, Eades L. Hogue, New Orleans, La., for Odie F. Vaughan, William L. Colson, Herman S. Kelley, Ronald W. Herman, Clovis H. Steib, in No. 86–0891.

D'Amato & Lynch, Timothy Butler, New York City, McGlinchey, Stafford, Mintz, Cellini & Lang, Dermot S. McGlinchey, T.A., B. Franklin Martin, III, Maureen O'Connor Sullivan, Anthony Rollo, New Orleans, La., for plaintiff in No. 86–3535.

Davis, Polk & Wardwell, New York City, for Murphy Oil Corp., Ocean Drilling & Exploration Co., Defendant Class Consisting of the Board of Directors Ocean Drilling & Exploration Co. and Mentor Ins. Ltd. (Bermuda), in No. 86–3535.

Phelps, Dunbar, Marks, Claverie & Sims, Harry A. Rosenberg, T.A., Harry S. Redmon, Jr., New Orleans, La., for Murphy Oil Corp., Ocean Drilling & Exploration Co., Mentor Holding Corp., Robert J. Sweeney, Hugh J. Kelly, James J. Kilpatrick, Tucker H. Couvillon, in No. 86–3535.

## MEMORANDUM OPINION AND ORDER

LIVAUDAIS, District Judge.

The voluminous record in this case is the result of a veritable deluge of filings, a hurricane of paperwork....

*Tucker v. Summers,* 784 F.2d 654, 655 (5th Cir.1986)

Compared to these storms, death is but a qualm, Hell somewhat lightsome, and the Bermudas calm.

John Donne, "The Storm"

This matter is before the Court by way of four separate motions: (1) the motion of defendants Ocean Drilling & Exploration Company ("ODECO"), Mentor Holding Company ("MHC"), Hugh J. Kelly and James L. Kilpatrick for a declaration of applicable law; (2) the same defendants' motion to dismiss the complaint for failure to state a claim; (3) the motion of all defendants to dismiss on the ground of *forum non conveniens;* and (4) the motion of defendant Pinnacle Reinsurance Company, Ltd. ("Pinnacle"), made in the alternative to the *forum non conveniens* motion, to certify for appeal the Court's previous order denying Pinnacle's motion to dismiss for lack of personal jurisdiction. Record Documents ("R.D.") 127, 153. These motions were argued on various dates, and all were taken under submission on November 6, 1987. R.D. 224. For the reasons that follow, we grant the third, and dismiss the first, second, and fourth as moot.

Mentor is an insurance company incorporated under the laws of Bermuda. It is totally owned by MHC, which is in turn a subsidiary of ODECO. Mentor became the subject of an involuntary liquidation proceeding in Bermuda on June 6, 1985. The complaint herein alleges that ODECO was the alter ego of Mentor and so controlled its affairs that it should be responsible for Mentor's entire net deficiency. The complaint further alleges that Mentor's financial statements for fiscal years 1982 and 1983 were false because they incorrectly reported two reinsurance transactions between Mentor and Pinnacle (another Bermuda insurance company). As alleged in the complaint, those financial reports materially overstated Mentor's financial condition.

It is the contention of the defendants that Bermuda is a more convenient forum for the adjudication of the instant lawsuit.

Fortunately, district courts have been furnished abundant guidance in resolving *forum non conveniens* motions, particularly by *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987) (*en banc*), *petition for cert. filed,* (U.S. November 6, 1987) (No. 87–750) ("*Air Crash*"), which formulated "the controlling procedure by which a district court should apply the ... principles of *forum non conveniens.*" *Id.* at 1165.

■ *Air Crash* sets out a series of factors which the district court should weigh in determining whether a proposed forum is available and adequate, and, if so, whether the private interests of the litigants or public interests favor trial in the foreign forum. While final determination of the convenience *vel non* of a particular forum is entrusted to the trial court's discretion, *Air Crash* requires "an exercise in structured discretion" by careful adherence to a step-by-step analysis and with the district court setting out "its decision making process clearly and in sufficient detail to permit [the Court of Appeals] adequately to review it, either by giving written reasons or by dictating the reasons for its decision into the record with the same degree of explicitness." *Id.* at 1165; 1166 n. 32.

■ As already noted, we must first decide whether the proposed alternate forum, Bermuda, is available and adequate. "A forum is available when the entire case and all the parties can come within the jurisdiction of that forum." *Id.* at 1165. It is unquestioned that the plaintiffs, appointed by a Bermuda court to wind up the affairs of Mentor, are subject to jurisdiction in Bermuda. The Court further finds that all defendants in this action have agreed to submit to jurisdiction in Bermuda and to waive any defenses of laches or prescription. R.D. 217 at 2.

Plaintiffs contend, however, that Bermuda is not an available forum because National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") has not

agreed to submit to Bermuda jurisdiction.[1] We observe that National Union is not a party to this litigation, but rather to *Ocean Drilling & Exploration Co., et al. v. National Union Fire Ins. Co. of Pittsburgh, Pa., et al.*, C.A. 86–352 and *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murphy Oil Corp., et al.*, C.A. 86–3535, which two cases have been consolidated with the instant matter for discovery purposes only, the Court having expressly rejected a motion for consolidation for trial as well. *Ocean Drilling & Exploration Co., et al. v. National Union*, C.A. 86–352, R.D. 51. Moreover, National Union has agreed to a stay of the aforementioned proceedings pending resolution of this litigation in Bermuda, R.D. 217 at 2–3, the outcome of which could assertedly moot the two National Union cases. Accordingly, we find that Bermuda is an available forum. *Cf. Syndicate 420 at Lloyd's London v. Early Am. Ins.*, 796 F.2d 821, 830 (5th Cir.1986) ("the defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of *forum non conveniens* analysis.")

A forum is adequate "when the parties will not be deprived of all remedies or treated unfairly ... even though they may not enjoy the same benefits as they might receive in an American court." *Air Crash*, 821 F.2d at 1165. Plaintiffs' first amended complaint advances as theories of recovery RICO, common law fraud, negligent misrepresentation, piercing the corporate veil, and breach of fiduciary duty. R.D. 139.

Plaintiffs contend Bermuda is an inadequate forum because: (1) their RICO claim cannot be heard in Bermuda (indeed, plaintiffs go so far as to claim that the doctrine of *forum non conveniens* is not applicable to RICO suits); (2) the complaint is otherwise read by the defendants as failing to state a claim under Bermuda law; and (3) plaintiffs would be prejudiced because Bermuda court rules provide more restrictive

discovery than that available in the United States.

We find these arguments unpersuasive. First, the Fifth Circuit has recently held that "The [*forum non conveniens* ] principles enunciated in [*Piper Aircraft Co. v.*] Reyno, [454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ] apply in *all* cases regardless of their jurisdictional bases or subject matter." *Air Crash*, 821 F.2d at 1163 (original emphasis). This language, together with the Second Circuit's express ruling in *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127 (2d Cir.1987) that RICO suits are subject to *forum non conveniens* dismissal, strongly indicates that *Industrial Investment Development Corp. v. Mitsui & Co.*, 671 F.2d 876 (5th Cir.1982), which held the doctrine of *forum non conveniens* categorically inapplicable to antitrust actions, and upon which decision plaintiffs heavily rely, ought at best be confined to its facts.

■ Second, neither the unavailability of RICO nor any alleged deficiencies in the complaint are sufficient to render Bermuda an inadequate forum. A forum is inadequate only where it would afford a plaintiff no remedy at all, *Air Crash*, 821 F.2d at 1165, as where the forum does not "permit litigation of the subject matter of the dispute." *Reyno*, 454 U.S. at 252 n. 22, 102 S.Ct. at 265 n. 22. There is no doubt that Bermuda "permits litigation" of the subject matter of the non-RICO counts of the complaints herein, namely common law fraud, negligent misrepresentation, breach of fiduciary duty, and piercing the corporate veil. Therefore, for the purposes of *forum non conveniens* analysis, plaintiffs will not be deprived of "all remedies" by trial in Bermuda.

Third, Bermuda's allegedly more restrictive discovery practices will impose no greater burden on plaintiffs than they will on defendants, so plaintiffs cannot com-

---

1. Plaintiffs also appear to contend that Bermuda is not an "available" forum because (a) their RICO causes of action will vanish in Bermuda and (b) because defendants contend that the complaint otherwise fails under Bermuda law to state any cause of action. Plaintiffs believe,

therefore, that "the entire case" *Air Crash*, 821 F.2d at 1165, cannot come before a Bermuda court. We regard these arguments as an attack upon the adequacy of the forum, and therefore treat them under that rubric.

plain of being treated unfairly, and, in any case, unless Bermuda discovery is so unfair as to constitute a complete denial of due process, it should receive little if any consideration in *forum non conveniens* analysis. *See, Reyno,* 454 U.S. at 252 & n. 18, 102 S.Ct. at 264 & n. 18. Finally, any possible prejudice to plaintiffs will be all but eliminated by making dismissal subject to a six month stay to allow the parties to complete discovery in the United States before proceeding to Bermuda. *Cf. Coakes v. Arabian American Oil Co.,* 831 F.2d 572, 573–4 (5th Cir.1987) *(forum non conveniens* dismissal approved where conditioned on 120 day stay to afford plaintiffs compulsory process and protection of district court to depose U.S. witnesses).

We therefore conclude that Bermuda is an available and adequate forum, and we turn to a consideration of the private interests of the parties. *Air Crash,* 821 F.2d at 1162.

First, as to the relative ease of access to sources of proof, defendants contend that the great bulk of documentary evidence is in Bermuda. That evidence assertedly comprises: records of Mentor; records in the Bermuda office of Arthur Young & Company pertaining to Walton Insurance Company, Belvedere Insurance Company, Ltd., I.C. Industries Insurance Company, Ltd.; and the records of Tate and Lyle Reinsurance Company, Ltd. Such evidence is necessary, contend defendants, to show the propriety of the accounting treatment accorded the reinsurance agreements between Pinnacle and Mentor, which have been attacked by the plaintiffs herein. Although it appears that defendants already have access to Mentor's records (as well as to records pertaining to Mentor from Pete Marwick & Mitchell in Bermuda), yet we find that the defendants' professed need for documents from Bermuda third parties tips this factor in favor of trial in Bermuda.

■ The second private interest factor is the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses. Initially, we acknowledge that the moving defendants bear a burden of persuasion running to all elements of the *forum non conveniens* analysis and must provide enough information to enable the court to balance the parties' interests. *Air Crash,* 821 F.2d at 1164–65. Nevertheless, it is not necessary for defendants to give "a detailed development of [their] entire case," *id.* at 1165 n. 28; it is not necessary that affidavits support the motion, *Camejo v. Ocean Drilling & Exploration,* 838 F.2d 1374, 1379–80 (5th Cir. 1988); and, according to the circumstances of the case, it is not even necessary to *identify* the witnesses defendants plan to use (let alone prove that they are unwilling to attend trial in plaintiffs' selected forum), *Reyno,* 454 U.S. at 258, 102 S.Ct. at 267. We therefore reject plaintiffs' repeated assertion that the defendants' motion must fail because they "have not proffered a single affidavit demonstrating either the materiality of [defendants' proposed] witnesses or their unwillingness to come to New Orleans to testify." R.D. 214 at 39. Rather, it is the Bermuda residence of large numbers of witnesses, including those whom defendants *and* plaintiffs desire to use, which makes Bermuda the more convenient forum, as will appear more fully from the following analysis.

Defendants have identified numerous individuals and corporations, all residents of Bermuda, whose live testimony at trial is claimed to be important to defendants' case. These are Robert Steinhoff and Kenneth O'Neill, auditors of Mentor at Peat, Marwick & Mitchell's Bermuda office (defendants expect to use other Peat Bermuda personnel as well), R.D. Spurling, Bermuda counsel to Walton Insurance Company, whose testimony is sought concerning the propriety of the accounting treatment accorded the reinsurance agreement between Walton and Pinnacle, an agreement defendants contend is virtually identical to the one between Mentor and Pinnacle; representatives of Arthur Young & Company in Bermuda, who conducted the audits of Walton Insurance Company (plaintiffs, though partners in Arthur Young in Bermuda, apparently did not conduct those audits, and hence cannot testify about them before this or any other court); John Kemp, Bryan

Martin and Allen Dunkle of Finance and Risk Services, Ltd., who assisted the management of Mentor's run off and whose testimony will be sought concerning the issues of damages and Mentor's net deficiencies; James Pearman and John Boden, formerly resident directors of Mentor, whose testimony is sought by defendants because *plaintiffs* support an important facet of their case—*viz.*, that Mentor was entirely controlled by ODECO from New Orleans—by reference to two letters from these individuals; Angus Hyslop, Mentor's former controller, whose testimony is sought concerning Mentor's true financial picture and corporate independence *vel non* fromODECO (we note that although Mr. Hyslop, in the National Union suits, is a member of the defendant class of all officers and directors of Mentor, yet those suits are not, contrary to plaintiffs' assertion, consolidated with this action for trial, *Ocean Drilling & Exploration Co., et al. v. National Union*, C.A. 86–352, R.D. 51); and various Bermuda government officials, including Mentor's official receiver, the Bermuda Minister of Finance, and officers of insurance trade associations, whose testimony will be sought concerning the ordinary relations between captive Bermuda insurance companies and their corporate parents (although plaintiffs contend such witnesses *may* claim official immunity and refuse to testify, it appears that such a privilege can and might be waived, R.D. 219 supporting affidavit of Michael Melo at 10). Additionally, it should be noted that plaintiffs desire to call as witnesses at trial representatives of Heddington Insurance in Bermuda.

Counterbalancing these Bermuda witnesses, plaintiffs have identified as potential witnesses three non-party individuals within this court's trial subpoena power: J. Gordon Reisch, James Browning, and William Hoffman, all residents of New Orleans and all employed at pertinent times by Peat, Marwick & Mitchell in New Orleans. Additionally, plaintiffs seek to use the testimony of Stephen Cosse, ODECO's general counsel, other unidentified employees of ODECO, and defendant Douglas Higley. However, defendants Higley and ODECO have agreed to submit to Bermuda jurisdiction, and ODECO has further agreed to produce not only Mr. Cosse but any of its employees for trial testimony in Bermuda.

Plaintiffs have also named a great number of witnesses whose testimony they seek, but witnesses who are beyond the trial subpoena power of this court. These witnesses are: personnel from Peat, Marwick & Mitchell's U.S. offices, including James Faber (New York), Daniel Howell (resident of Arizona and New Jersey), and Richard Hirschman (New York); Herman Schwinde, former president of Mentor (New York); John Swift, Mentor's in-house actuary (Ohio); Mentor's and ODECO's various New York bankers; representatives of Murphy Oil Corporation in Arkansas; Michael Quinones, Mentor's underwriter (Connecticut); members of the law firm of Wilson, Elsen, Edelman and Dicker, which issued an opinion letter concerning the Pinnacle reinsurance agreement (New York); representatives of National Union, a Pennsylvania corporation with its principal place of business in New York City; and representatives of American Re. & Metropolitan Re., American insurance companies allegedly involved, like Heddington Insurance in Bermuda, as "fronts for the reinsurance by Mentor of risks underwritten by Mentor Insurance Company (U.K.), Ltd., for which relevant witnesses . . . will be found in the United States," R.D. 214 at 38, although plaintiffs do not specify where.

We hold that the foregoing hypothetical "witness lists" establish that considerably more live trial testimony will be available in Bermuda than in New Orleans, where it appears that relatively few witnesses reside. The parties will still be able to depose the large number of witnesses residing elsewhere in the United States, since the Court will subject its order of dismissal to a six month stay to allow discovery. (Plaintiffs assure us that "once this motion faucet is turned off, the parties could complete discovery in six months," R.D. 214 at 53.) *See Coakes v. Arabian American Oil Co.*, 831 F.2d at 573–74. As the over-

whelming number of these witnesses reside in and around New York, we further hold that Bermuda is a closer and more convenient forum than New Orleans, should any of them be willing to testify at trial. This last holding resolves in favor of trial in Bermuda the third private interest factor, which is "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Air Crash*, 821 F.2d at 1162.

We conclude that the fourth private interest factor, the possibility of view of the premises, is not relevant to this action.

The fifth private interest factor is the enforceability of a judgment if one is obtained. The U.S. defendants have stipulated that any final judgment obtained by plaintiffs in Bermuda shall be accorded full faith and credit "in any United States District Court in which plaintiffs seek to enforce said judgment." R.D. 217 at 2. We therefore find that a judgment will be enforceable against these defendants whether plaintiffs procure it in this forum or in Bermuda.

The last private interest factor is the timeliness of the motion. Although plaintiffs deal with this factor as if it were a threshold issue and a potential bar to the instant motion, the Fifth Circuit in *Air Crash* expressly indicates that timeliness should be considered as but one of the private interest factors. *Air Crash*, 821 F.2d at 1165 & n. 30. Plaintiffs regard the instant motion as untimely because the motion was not made until a year and a half after suit was filed even though the defendants all the while purportedly knew of the factors they now claim support the motion. Plaintiffs contend that this untimeliness caused themselves and the court to incur costs and inconveniences, largely as a result of this motion's being urged after, rather than before, defendant Higley's motion to disqualify counsel, Pinnacle's motion to dismiss for lack of personal jurisdiction (which were previously ruled upon, R.D. 78, R.D. 127 and R.D. 153) and the motions to dismiss for failure to state a claim, for a declaration of applicable law, and to certify (which are disposed of herein). We find, however, that in light of the

magnitude and complexity of this case, the delay of a year and half for filing the motion does not demonstrate that defendants were dilatory, particularly since defendants' work on their motion for declaration of applicable law provided important information for the choice of law and foreign law issues that must be considered among public interest factors in their *forum non conveniens* motion. We also note that this case has not reached the discovery stage, and we infer that dismissal at this juncture will not prejudice the parties' ability to prepare for trial. We therefore conclude that the private interest factors together weigh in favor of trial in Bermuda.

"As no one set of factors is conclusive, we also address the factors of public interest." *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 879 (5th Cir.1987). First, with respect to administrative difficulties flowing from court congestion, we find that the record already amassed and the proceedings already conducted grimly foreshadow the drain on the court's time and energy which trial in New Orleans will entail. Moreover, agreement to stay the two related *National Union* suits pending resolution of this case in Bermuda will remove a not inconsiderable burden from this court's docket, which relief, according to the outcome in Bermuda, may be more than temporary. R.D. 217.

The second public interest factor is the local interest in having localized controversies resolved at home. The alleged injury herein occurred to a Bermuda corporation whose affairs are being wound up under the laws of Bermuda, with any recovery going to the estate in receivership. It further appears that Bermuda has the third largest reinsurance market in the world; the regulation of insurance reflects Bermuda's interest in maintaining its credibility as an international insurance center. R.D. 195 Exhibit 3B at 3–8. More particularly, these regulations required of Mentor annual audits, and the propriety of these audits as reflected in Mentor's financial statements for the fiscal years 1982 and 1983 is at the very heart of this lawsuit. We find that it follows ineluctably that with respect

to the accounting practices challenged by plaintiffs in this suit, Bermuda has an interest dwarfing any this forum might have (which largely consists in the Louisiana residence of most of the defendants). Bermuda expressed its particular interest in this case in 1985, when, at the urging of the Bermuda Underwriters Association, the Government intervened to thwart ODECO's attempt to remove Mentor's records from Bermuda to Louisiana. R.D. 195 at 18 & Exhibit 9.

Nevertheless, plaintiffs, for several reasons, believe Louisiana has an interest in this litigation which would warrant retaining jurisdiction. First, plaintiffs argue that in rejecting Pinnacle's earlier motions to dismiss for lack of personal jurisdiction, the Court has already found this forum to have an interest in this litigation. Plaintiffs rely on the following language from the Court's opinion: "where most of the defendants are residents of Louisiana, and where plaintiffs' RICO causes of action constitute a strong interest in having the suit entertained in this forum." R.D. 153 at 5.

Plaintiffs have misconstrued this language, which was explicitly an application of *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Etc.,* — U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) which set this test to determine whether the exercise of personal jurisdiction in a particular case passed constitutional muster: "A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." *Id.* 107 S.Ct. at 1034. Thus, properly understood, we observed: "Most of the defendants are residents of Louisiana [who at that time had not yet consented to suit in Bermuda], and ... plaintiffs' RICO causes of action constitute a strong interest [on the part of the plaintiffs in obtaining relief] in having the suit entertained in this forum." Although we were (and are) prepared to recognize that the Louisiana residence of most of the defendants constitutes a Louisiana interest in the exercise of jurisdiction, we cannot say that the residence of the defendants is nearly enough to make Louisiana the more convenient forum. *Cf. Reyno,* 454 U.S. at 250, 102 S.Ct. at 263 ("Jurisdiction and venue requirements are often easily satisfied.") Of course, as noted above, we expressly refuse to consider plaintiffs' RICO causes of action as interests of the forum for the purposes of *forum non conveniens* analysis.

Second, according to plaintiffs, numerous fraudulent acts occurred in Louisiana, including review and approval of drafts of the Pinnacle agreement and side letters; and plaintiffs find in Mentor's 1983 financial statement, which was distributed from New Orleans, an additional basis for Louisiana interest. We observe that although Louisiana may have a generalized interest in discouraging fraud, and even a more particularized interest in discouraging fraud by Louisiana residents, "the incremental deterrence that would be gained if this trial would be held in a [Louisiana] court is likely to be insignificant. The [Louisiana] interest in this [issue] is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required should the case be tried here." *Reyno,* 454 U.S. at 260–61, 102 S.Ct. at 268. If the defendants have perpetrated the fraudulent and negligent acts averred by the complaint, we are confident that a Bermuda trial court will see to it that defendants make good whatever harm they did, contrary to plaintiffs repeated representations that defendants will go unpunished if they are not tried here.

Third, plaintiffs claim to represent the interest of Mentor's creditors, many of whom are assertedly located in Louisiana, although plaintiffs do not say how many, or what percentage of all creditors. In any case, we find this alleged Louisiana interest to be oblique and speculative, whereas Bermuda's interests in Mentor's recovery are direct and concrete.

Fourth, according to plaintiffs, Louisiana has a regulatory interest in this litigation because Mentor was subject to and complied with various Louisiana laws and regulations when Mentor wrote "Excess and Surplus" insurance in Louisiana. How-

ever, whatever regulatory interests Louisiana may once have had in Mentor is scarcely reflected in this litigation, which arises out of no Louisiana risk insured by Mentor and involves no claims by Louisiana insureds against Mentor. Moreover, as defendants note, the proposition that Louisiana has a "regulatory interest" in this litigation cannot be squared with the fact that the Louisiana Insurance Department has closed its file on Mentor. R.D. 194, Exhibit 13.

We therefore conclude that the second public interest factor, having localized controversies resolved at home, favors trial in Bermuda.

The last public interest factor is the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law. As a general rule, "a choice of law analysis is only tangentially relevant to ... *forum non conveniens* analysis and ... a court need not perform a choice of law analysis before its *forum non conveniens* analysis." *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1378 (5th Cir. 1988). Indeed, ruling on the pending choice of law motion would involve the court in those very labors that the doctrine of *forum non conveniens* has repeatedly been recognized as meant to prevent.

Nevertheless, without fully disposing of defendants' choice of law motion, we find that trial of this matter will entail the application of Bermuda law, at least to two of plaintiffs' causes of action.

As a preliminary matter, it is necessary to acknowledge the court's obligation to apply the choice of law principles of the forum state, Louisiana, which has adopted the interests analysis principles of the *Restatement* (Second) *Conflict of Laws* (1971) ("*Restatement*"). *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973). There appears to be little doubt that a Louisiana court would apply Bermuda law to Counts VI and VII of the amended complaint, R.D. 139 (and we therefore find it unnecessary, for *forum non conveniens* analysis, to discuss the complaint's other counts). Count VI prays that Mentor's corporate existence be discarded and that ODECO be held lia-

ble for all of Mentor's net deficiency. R.D. 139 at 28–33. The *Restatement* at section 307 provides that: "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions into its creditors for corporate debts." This principle is reiterated elsewhere: "*Insofar as this protection is accorded them in the state of incorporation*, a state will usually recognize the immunity of the shareholders of a foreign corporation from being sued as individuals on matters arising out of the acts or omissions of the corporation and from having their individual property made responsible for the obligations of the corporation." *Restatement* section 297, Comment (c) (emphasis added).

As plaintiffs insist, these rules contemplate the application of interest analysis to piercing the corporate veil claims; nevertheless, for reasons stated elsewhere in this opinion, we find that Bermuda's interests in this litigation outweigh those of Louisiana and compel application of Bermuda law to Count VI. Moreover, it is not disputed herein that Mentor was incorporated in Bermuda, that its principal place of business was in Bermuda, that it maintained offices and a staff in Bermuda, and that its records were (and thanks to the intervention of Bermuda itself, are still) located in Bermuda. A Louisiana court has applied the laws of the state of incorporation in similar circumstances. *See, QuickKick, Inc. v. QuickKick International*, 304 So.2d 402 (La.App. 1st Cir.1974) *cert. denied*, 305 So.2d 123 (La.1974). The cases cited by plaintiffs to support the application of Louisiana law involved corporations whose only contact with the foreign state was "the naked fact of the corporation." *E.g., Mansfield Hardwood Lumber Co. v. Johnson*, 268 F.2d 317 (5th Cir.1959).

Count VII alleges breach of fiduciary duty by directors and officers of Mentor, to which cause of action the principles of the *Restatement* compels application of Bermuda law:

The local law of the state of incorporation will be applied to determine the

existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship ... to the parties and the transaction, in which event the local law of the other state will be applied. *Restatement,* section 309.

It is certain that this section applies to Count VII: "Liability will typically be imposed upon directors under the rule of this section for such matters as the fraudulent or negligent mismanagement of the corporation's affairs...." *Id.* Comment (A). Moreover, the *Restatement* elsewhere confirms that courts usually apply the laws of the state of incorporation in a suit involving the "internal affairs of a corporation," "internal affairs" being defined as "the relations inter sese of the corporation, its stockholders, directors, officers, or agents." *Id.* section 313 Comments (A), (E).

It has also been expressly held that a Louisiana court would apply the laws of the state of incorporation to *any* cause of action requiring a determination of "the relations inter sese of the corporation" except "where the only contact point with the incorporating state is the naked fact of incorporation, and where *all* the other contact points ... are found in another jurisdiction." *Glazer v. Glazer,* 374 F.2d 390, 407 (5th Cir.1967) (*quoting Mansfield Hardwood Lumber Co. v. Johnson,* 268 F.2d at 321) (emphasis added). Such an exception does not apply to Mentor, as far from "*all* the other contact points" are in Louisiana.

We therefore conclude that trial of this matter in Louisiana will involve problems not only with conflicts of laws but also with the application of Bermuda law.

We further conclude that the public interest factors as well as the private interest factors favor trial of this matter in Bermuda.

Accordingly, IT IS ORDERED that the motion of defendants for dismissal on the ground of *forum non conveniens* is hereby GRANTED, subject to the following conditions:

(1) That this order of dismissal is subject to a stay of six months, until October 14, 1988, to allow the parties to complete discovery in this country;

(2) That defendants file in the record herein not later than May 16, 1988 a stipulation that they will submit to the jurisdiction of the courts of Bermuda in response to any suit reasserting the plaintiffs' claims as set forth in the first amended complaint herein;

(3) That defendants file in the record herein not later than May 16, 1988 a stipulation that in response to the plaintiffs' claims as reasserted in the Bermuda courts they waive all defenses based upon laches, any statute of limitation or other timeliness defense, provided only that the plaintiffs' claims have been reasserted in Bermuda not later than October 14, 1989;

(4) That all defendants file in the record herein not later than May 16, 1988 a stipulation that in the event plaintiffs should obtain a final judgment against defendants in the courts of Bermuda which becomes subject to execution, defendants agree that full faith and credit shall be accorded said judgment in any United States District Court in which plaintiffs seek to enforce said judgment;

(5) That defendants file in the record herein not later than May 16, 1988 a stipulation that each defendant will give evidence at trial and produce documents in its possession, custody and control in accordance with the rules of the Supreme Court of Bermuda, 1952, or as they may subsequently be amended, as if each defendant were a resident of Bermuda and the documents (and, in the case of corporate defendants, employees) were located in Bermuda,

(6) That defendants file not later than October 14, 1988 a stipulation of dismissal, without prejudice, of all cross

claims, which cross claims may be refiled in the courts of Bermuda; and that defendant ODECO files a stipulation of dismissal, without prejudice, of ODECO's counter claims against plaintiffs, which counter claims may be refiled in the courts of Bermuda;

(7) That National Union Fire Insurance Company of Pittsburgh, Pa. and all defendants who have appeared in Civil Actions 86–352 and 86–3535, file in the records of those proceedings not later than May 16, 1988 a joint stipulation that all matters therein pending shall be stayed by agreement until such time as (a) the courts of Bermuda have rendered final judgment on the claims reasserted by plaintiffs herein or (b) said claims have otherwise been concluded.

Moreover, the Court being of the opinion that this order granting the motion for dismissal on the basis of *forum non conveniens* involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order granting the motion for dismissal may materially advance the ultimate termination of the litigation, *see Air Crash*, 821 F.2d at 1167 n. 34, accordingly, IT IS ORDERED that the foregoing order is hereby CERTIFIED FOR APPEAL pursuant to 28 U.S.C. § 1292(b).

IT IS FURTHER ORDERED that the motion of defendants for a declaration of applicable law, the motion of defendants to dismiss for failure to state a claim, and the alternative motion of Pinnacle to certify the Court's previous denial of Pinnacle's motion to dismiss for lack of personal jurisdiction, are all hereby DISMISSED AS MOOT.