**ANDROS COMPANIA MARITIMA S.A., Plaintiff,**

v.

**INTERTANKER LTD., Interpetrol Bermuda, Ltd., and Henri Lehner, Defendants.**

No. 86 Civ. 7578 (PKL).

United States District Court, S.D. New York.

June 9, 1989.

670

Healy & Baillie, New York City (John C. Koster, of counsel), for plaintiff.

Kennedy & Lillis, New York City (John T. Lillis, Jr., of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff Andros Compania Maritima S.A. ("plaintiff" or "Andros") is a corporation organized and existing under the laws of the Bahamas. Complaint ¶ 2. Plaintiff, as owner of the vessel M.T. HAKUYOH, entered into a voyage contract with Intertanker Ltd. ("Intertanker"), who was to charter the vessel for deliveries originating in the South Pacific. A dispute arose under that contract and, pursuant to the terms of the contract, the dispute was arbitrated in New York. Andros was awarded $ 473,733.23, and on November 17, 1983, secured confirmation of that award in this Court. *See* Judgment No. 83,1888, 83 Civ. 2891 (JMC) (S.D.N.Y.1983) (the "judg-

ment"). No part of that judgment has been satisfied.

The present action is an effort to collect the amount of that judgment, plus interest, from the three named defendants (collectively "defendants"). Andros sues Intertanker, which is apparently an inactive corporate shell without substantial assets. Complaint ¶ 8. It is alleged, *inter alia,* that Intertanker was a wholly-owned subsidiary of defendant InterPetrol Bermuda Ltd. ("InterPetrol"), and that Intertanker and InterPetrol were operated as a single business enterprise. Plaintiff therefore also seeks to hold InterPetrol liable for the amount of the judgment. Additionally, defendant Henri Lehner ("Lehner") is alleged to have dominated and controlled both companies, and therefore to be liable to Andros.

The ultimate merits of this corporate piercing action are not yet before the Court. Plaintiff initially moved for a preliminary injunction, seeking to have the assets of defendants preserved through their deposit into the registry of the Court, pending the ultimate resolution of the action. Defendants opposed that application, and responded that: 1) this Court lacks subject matter jurisdiction over the action, 2) this Court lacks personal jurisdiction over defendants InterPetrol and Lehner,[1] and 3) the doctrine of *forum non conveniens* requires dismissal of the entire action.

By order dated September 7, 1988 (the "9/7/88 Opinion"), this Court held that it had subject matter jurisdiction, but that an evidentiary hearing was necessary before the final personal jurisdiction and *forum non conveniens* determinations could be made. The Court declined to dismiss the Complaint against any defendants at that time. The parties were allowed to engage in discovery before the hearing. The hearing was held on May 3, 1989, after some delay by the parties, and particularly by defendant Lehner. By letter to the Court dated April 17, 1989, defendants requested a separate hearing on the determination of the preliminary injunction issues.

As indicated below, the Court finds that it has jurisdiction in this action over the defendant Lehner, but cannot exercise jurisdiction over InterPetrol. The forum is not impermissibly inconvenient, and the action will not be dismissed on *forum non conveniens* grounds.

BACKGROUND

Lehner alleges that he is a citizen of West Germany, and a current domiciliary of Bermuda. Affidavit of Henri Lehner, sworn to on May 7, 1987 ("5/7/87 Lehner Aff."), ¶¶ 2, 3. *See also* Affidavit of Henri Lehner, sworn to on September 24, 1987 ("9/24/87 Lehner Aff."), ¶ 3. Plaintiff vigorously disputes that claim, and has produced substantial evidence indicating that Lehner was, in fact, a domiciliary of New York. *See generally,* Affidavit of John C. Koster, Esq., sworn to on May 22, 1987 ("5/22/87 Koster Aff."), ¶¶ 1–7. *See also,* Affidavit of John C. Koster, Esq., sworn to on October 14, 1987 ("10/14/87 Koster Aff."), ¶ 3. This evidence includes prior sworn testimony by Lehner that he was, during the relevant period, residing in New York, that he gave out a New York telephone number where he could be reached, and that he avoided Bermuda for substantial periods because of an outstanding warrant for his arrest there. 5/22/87 Koster Aff., Exh. 3, pp. 53–59, 61.

At the hearing, which Lehner chose not to attend,[2] overwhelming evidence was introduced indicating that Lehner is in fact a domicilairy of New York. Numerous charge receipts and cancelled checks were produced which revealed extensive and sys-

---

1. Personal jurisdiction over Intertanker is not challenged.

2. Plaintiff's counsel unsuccessfully attempted to subpoena Lehner for the hearing. Lehner's counsel responded that Lehner failed to attend because he was "fully booked for the week with business activities." Tr. 32. Prior deposition testimony from Lehner was introduced.

To the extent that there might be conflicting inferences which would have been clarified by examination and cross-examination of Lehner, those inferences will be construed against Lehner. *Cf. Tupman Thurlow Co. v. S.S. Cap Castillo,* 490 F.2d 302, 308 (2d Cir.1974).

tematic purchases, consistent with residence in New York.[3] This evidence also revealed that Lehner clearly has access to, and perhaps actual ownership interests in, three residences in New York. These included an apartment on West 21st Street and a cooperative apartment on Fifth Avenue in Manhattan, and a home in Southampton. The sole evidence introduced at the hearing on behalf of defendants were cancelled rent checks on the 21st Street apartment, signed by Lehner's wife. *See* DX 1.

Additionally, Lehner has previously testified under oath that he maintains record storage facilities in New York, 5/22/87 Koster Aff., Exh. 6, pp. 68–69, 71, that he may have an ownership interest in one or more New York residences, 5/22/87 Koster Aff., Exh. 4, pp. 2–4, and that he has previously issued correspondence using a letterhead reflecting a New York address. 5/22/87 Koster Aff., Exh. 5. Lehner asserts, however, that he never conducted oil trading activities, either on his own behalf or on behalf of InterPetrol, in New York. 5/7/87 Lehner Aff., ¶ 8. *See also*, Affidavit of John T. Lillis, Esq., sworn to on October 27, 1987 ("10/27/87 Lillis Aff."), ¶ 3. One of Lehner's credit card payments in 1982 was made out of an account that InterPetrol maintained at Bankers Trust Company in New York. *See*, PX C–3.

On October 3, 1986, Lehner was present in the offices of a New York law firm for an arbitration proceeding. At that time, Lehner was personally served with a summons and complaint in connection with this action. *See*, Affidavit of Personal Service by Karl V. Reda, sworn to on October 8, 1986, attached as Exh. 1 to 5/22/87 Koster Aff.

During the relevant period, Lehner was the General Manager and President of In-

terPetrol. According to his testimony in other actions, the wholly owned subsidiary Intertanker would charter vessels on behalf of InterPetrol and its affiliates. InterPetrol would then use these vessels to transport oil or other cargo, pursuant to sales contracts executed between InterPetrol and third parties. *See*, Affidavit of John C. Koster, Esq., sworn to on March 27, 1987 ("3/27/87 Koster Aff.") ¶ 5, and Exh. B.

Both Intertanker and InterPetrol have ceased to be active, functioning business enterprises. *See*, 5/7/87 Lehner Aff., ¶ 5. Intertanker is currently the subject of an ongoing liquidation proceeding in Bermuda. *See* Affidavit of Philip J. Chesterman, Esq., sworn to on May 7, 1987 ("5/7/87 Chesterman Aff."), ¶ 8. No assets of Intertanker have been located in that liquidation. 5/22/87 Koster Aff., Exh. 8. Andros has filed a claim in the Bermuda Intertanker liquidation proceeding. 5/7/87 Chesterman Aff., ¶ 7.

Since 1982, InterPetrol has not engaged in active business activity. Its only endeavor since then has been the pursuit of litigation, adjustment, and arbitration of claims against third parties, which were generated while it was an active business concern. 5/22/87 Koster Aff., Exh. 6, pp. 20, 29; Exh. 3, p. 94. InterPetrol has not engaged in oil trading since 1982, and its only apparent assets are its claims for the debts still owed to it. *Id.* at p. 48. InterPetrol presently has no full or part time employees. *Id.* at p. 106. In addition to InterPetrol's legal pursuits in New York, Andros alleges that there is the possibility of InterPetrol storage facilities in New York, 5/22/87 Koster Aff., Exh. 6, pp. 69, 71, and that InterPetrol shareholder meetings were held in New York. 5/22/87

---

**3.** At the hearing, several copies of the exhibits which plaintiff sought to introduce were not sufficiently legible. Subsequent to the hearing, the lawyers conferred, obtained better copies of certain documents, withdrew certain proffers, and agreed upon and identified for the Court which copies were deemed sufficiently clear to be admitted into evidence.

The parties continue to disagree, however, as to the admissibility of certain records, which

would further support plaintiff's assertion that Lehner owned New York residences. *See e.g.*, Letter from John T. Lillis, Esq., dated June 1, 1989. That evidence is not dispositive for present purposes, and the Court therefore does not now address the various evidentiary arguments made by counsel. For the record, the Court's findings above are made without consideration of the disputed exhibits.

Koster Aff., Exh. 6, pp. 83–93; Exh. 3, pp. 64–65; Exh. 7.[4] As noted above, InterPetrol maintained a checking account in New York prior to 1982.

Specifically, Andros asserts that Lehner and InterPetrol are currently pursuing various arbitrations and litigations, including lawsuits in state and federal courts in New York. 5/22/87 Koster Aff., Exh. 6, pp. 33, 39–40, 42; Exh. 3, p. 49. *See also,* 3/27/87 Koster Aff., ¶ 8. Prior to 1986, it is alleged that Intertanker was also involved in numerous similar litigation activities on its own behalf, and that Lehner was actively involved in those Intertanker endeavors. 5/22/87 Koster Aff., Exh. 6, pp. 66–69. After 1986, when this lawsuit was filed, the balance of those ongoing actions were abandoned or resolved. *Id.*

Andros seeks, in the preliminary injunction motion presently before the Court, to have any such recoveries preserved.[5] Ultimately, by virtue of the allegations in the complaint or its status as a judgment creditor of Intertanker, to whom InterPetrol and Lehner allegedly owe money, Andros seeks to satisfy its judgment out of those funds. 3/27/87 Koster Aff., ¶ 4.

In an unrelated 1982 action against Intertanker in Bermuda, a former Intertanker accountant named John Hardy ("Hardy") testified extensively about the financial relationships between Intertanker, InterPetrol and Lehner. *See,* Exh. D, attached to 3/27/87 Koster Aff. That testimony indicated that InterPetrol owed substantial commissions to Intertanker, arising from Intertanker's chartering of ships on InterPetrol's behalf, and that InterPetrol ceased paying those commissions in 1979. Additionally, it is alleged that InterPetrol transferred all of the cash holdings of Intertanker to itself, and that, as of August, 1981, InterPetrol still owed Intertanker in excess of one million dollars. *Id.*

Defendants indirectly impugn the credibility of the Hardy testimony, dismissing him as an "apparently disgruntled" former employee. *See, e.g.,* Defendants' Memorandum Dated March 2, 1987, at p. 16. Defendants generally maintain that Intertanker, InterPetrol and Lehner are distinct and separate entities. *See,* 5/7/87 Lehner Aff., ¶ 6. *See also,* 5/7/87 Chesterman Aff., ¶ 4.

## DISCUSSION

### 1. PERSONAL JURISDICTION.

As this Court noted in its prior opinion, plaintiff's initial *prima facia* showing of personal jurisdiction over defendants was insufficient, in light of defendants' challenge to that showing and the injunctive relief being preliminarily sought in this case. *See, Visual Sciences v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir.1981). After the jurisdictional hearing, Andros has the burden of establishing this Court's jurisdiction over defendants by a preponderance of the evidence. *See, e.g., Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

Subject matter jurisdiction here is based on admiralty. The Federal Rules of Civil Procedure are applicable, and incorporate state law bases of jurisdiction. Fed.R. Civ.P. 4(e) and (f). *See, Masonite Corp. v. Hellenic Lines, Inc.,* 412 F.Supp. 434 (S.D.

---

**4.** In an unrelated malpractice action in this Court, brought by InterPetrol against one of its former attorneys, InterPetrol was held *not* to be a resident of New York, or have its principal place of business here, for purposes of defeating diversity. *InterPetrol Bermuda Ltd. v. Arnold Rosenwasser,* 86 Civ. 5631 (JFK), 1987 WL 7734 (S.D.N.Y. March 2, 1987), attached as Exhibit A to Defendant's Memorandum Dated May 8, 1987.

**5.** Similar relief was granted to Andros by the Honorable Shirley Wohl Kram, District Judge of this Court, in *In re Holborn Oil Trading Ltd. and InterPetrol Bermuda Ltd.,* 658 F.Supp. 1205 (S.D.N.Y.1987). Personal jurisdiction over InterPetrol was not contested in that case, as In-

terPetrol initiated the action to confirm an arbitration award, and Andros moved to intervene and for the injunction. The *Holborn* action was subsequently re-assigned to this Judge, as related to the present lawsuit, in May of 1987.

There is a third related action involving these same parties presently before this Judge, namely *In re InterPetrol Bermuda Ltd. and Stinnes Interoil Inc.,* 88 Civ. 8628 (PKL), wherein InterPetrol seeks to confirm another arbitration award, and Andros again seeks to intervene. There are outstanding motions in that case which are not directly addressed in this opinion; the three cases remain separate and unconsolidated.

N.Y.1976) (admiralty action). *See also, Marsh v. Kitchen,* 480 F.2d 1270 (2d Cir. 1973). Jurisdiction is determined by reference to the law of the forum state, in this case New York, and specifically New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302. *See, e.g., Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963). Finally, of course, the Court must assure itself that any exercise of personal jurisdiction is consistent with the constitutional constraints of due process.

#### A. *Lehner.*

■ In its prior order, the Court indicated that it had probable jurisdiction over the defendant Lehner, under CPLR § 301. The evidence adduced at the hearing substantially confirms that determination. Despite his counsel's generalized arguments that Lehner is an "international person," and presumably not sufficiently present in *any* jurisdiction, the Court agrees with plaintiff's position that Lehner's significant presence in New York is overwhelmingly established. The concrete evidence before the Court discloses substantial and lengthy stays by Lehner in New York, and leads to the inescapable conclusion that Lehner is a New York resident.[6]

■ As the Court noted in its prior opinion, Lehner was personally served while he was present in New York. Lehner was attending an arbitration proceeding when he was served, and argues that a sort of quasi-judicial immunity precludes the exercise of jurisdiction. *Cf. Bonaparte v. McCarthy,* 120 Misc.2d 81, 465 N.Y.S.2d 395, 397 (Sup.Ct.Onandaza Co.1983). That argument must be rejected for several reasons. The immunity doctrine only applies to non-domiciliaries. Lehner was otherwise sufficiently present in New York to be subject to service; to hold that the service in this case was ineffective would yield the peculiar result that on that particular day Lehner was subject to service of process anywhere *but* New York. *See, Merigone v. Seaboard Capital Corp.,* 85 Misc.2d 965, 381 N.Y.S.2d 749, 751 (Nassau Cty.1976). *See also Chauvin v. Dayon,* 14 A.D.2d 146, 217 N.Y.S.2d 795, 798 (3d Dep't 1961); *Davidman v. Ortiz,* 63 Misc.2d 984, 314 N.Y.S.2d 198 (Queens Co. 1970). *Cf. Hoffritz for Cutlery Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir.1985). As defendants' counsel acknowledges, even if a judicial immunity were somehow applicable, which it clearly is not, extension of the doctrine to an arbitration would apparently be unprecedented. *See,* Tr. 62.

#### B. *InterPetrol.*

■ The Court's jurisdiction over Inter-Petrol is not as clear-cut, and does not flow automatically from the New York residence of InterPetrol's officer Lehner.[7]

---

**6.** Lehner's residence in New York, of course, precludes any possible constitutional impediment to jurisdiction over him. Presence in a forum is the original, historic basis of jurisdiction, and remains a theoretical underpining to the jurisdictional inquiry, within the due process framework. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Additionally, the Court notes that Lehner could not attempt to take refuge under the fiduciary shield doctrine, as New York has explicitly rejected that jurisdiction-limiting concept. *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 472, 527 N.Y.S.2d 195, 202, 522 N.E.2d 40, 47 (1988).

**7.** Plaintiff cites cases interpreting 18 U.S.C. § 1965, which is the RICO venue provision, in arguing that jurisdiction over a corporation's principal *automatically* renders jurisdiction over the corporation, and vice versa. *See, e.g.,*

*Miller Brewing Co. v. Landau,* 616 F.Supp. 1285, 1289 (E.D.Wisc.1985), Plaintiff's Memorandum Dated May 2, 1989, pp. 6–7.

Those cases are not applicable, however, and plaintiff's statement of the law is too broad. The issue here is simply this Court's ability to exercise jurisdiction over the corporate defendant, under the New York long arm statute, and within the constraints of due process. As indicated below, InterPetrol's activities in this forum, even including any actions on InterPetrol's behalf by the resident Lehner which might be attributed to InterPetrol, are insufficient to support jurisdiction.

There is a superficial similarity in that both the RICO venue analysis and state long arm provisions require assessment of contacts and transactions in a forum. The RICO determination, however, is a matter of federal law and a particular federal district, while the long arm inquiry initially involves state law and contacts with the state.

Plaintiff makes several arguments, however, for jurisdiction over InterPetrol, under both the "doing business" standard of CPLR § 301 and the "transacting business" provision of § 302(a)(1). As indicated below, the Court concludes that it cannot exercise jurisdiction over InterPetrol.

### (i.) CPLR § 301

In this case, it is important to note that the relevant time frame for the jurisdictional inquiry under § 301 is at the time of service of the summons and complaint. *See, Gaboury v. Central Vermont Ry. Co.*, 250 N.Y. 233, 236, 165 N.E. 275 (1929) (Cardozo, C.J.); *Propulsion Systems, Inc. v. Avondale Shipyards, Inc.*, 77 Misc.2d 259, 352 N.Y.S.2d 749, 751 (N.Y. Co. 1973). *See also, Arrow Trading Co. v. Sanyei Corp. (Hong Kong), Ltd.*, 576 F.Supp. 67, 69 (S.D.N.Y.1983); *Top Form Mills, Inc. v. Sociedad Nationale Ind., Etc.*, 428 F.Supp. 1237, 1246 n. 12 (S.D.N.Y.1977).

■ The concept of presence with regard to a corporation, of course, can only involve its place of incorporation or the extent that it "does business" in a particular jurisdiction. When InterPetrol was actively engaged in the oil trading business, it maintained a bank account here, and may have been present in New York. That activity, however, and thus that presence, ceased in the early 1980's. Plaintiff argues that InterPetrol subsequently continued "doing business" in New York through 1986, in the form of collection of debts that were generated during its active phase.

The "doing business determination is unique to each case, requiring a careful consideration of all the facts and circumstances without relying too heavily on any one factor." *Katz Agency, Inc. v. Evening News Ass'n*, 514 F.Supp. 423, 429 (S.D.N.Y. 1981), *aff'd*, 705 F.2d 20 (2d Cir.1982). There is no evidence that in 1986 InterPetrol had an office in the state, had bank accounts or property in the state, employed workers in New York, maintained a telephone listing in New York, or solicited business here. The relevant contacts in this case essentially amount to a mere handful of arbitrations and litigations in New York which involve InterPetrol. Clearly, this does not approach "doing business" with the "fair level of permanence and continuity" required under § 301. *Beacon Enterprises Inc. v. Menzies*, 715 F.2d 757, 762–63 (2d Cir.1983) (*quoting Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)); *Rolls Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1044 (S.D.N.Y.1987). *See also Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982).

Plaintiff also apparently argues that activities of entities related to InterPetrol can be attributed to it, and satisfy the doing business test under § 301. There is no evidence of sufficient activity on behalf of InterPetrol in New York by any of those corporate subsidiaries or agents in 1986, and actions by the allegedly related entities do not support jurisdiction over InterPetrol.[8]

### (ii.) CPLR § 302

Alternatively, this Court might have jurisdiction over InterPetrol under § 302, if this particular claim arose out of InterPetrol's transaction of business in this state. *See generally, Cutco Industries v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986); *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). Transacting business requires less substantial activity than the general doing business test, but requires a nexus between the activity and the claim. *See, e.g., McGowan, supra*, 52 N.Y.2d at 272, 437 N.Y.S.2d at 645, 419 N.E.2d at 323 (an "articulable nexus between the business transacted and the cause of action sued upon" is essential); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir.1985); *Ross v. Colorado Outward Bound School, Inc.*, 603 F.Supp. 306 (W.D.N.Y.1985). In this case, the only "business" which could have been transacted, and out of which this claim to enforce an arbitration award could have arisen, was the underlying oil brokerage contract

---

**8.** *See infra* footnote 10, and accompanying text.

between Andros and Intertanker.[9]

■ The details and circumstances of that underlying contract are not entirely clear. Although given an opportunity to conduct discovery and to present evidence to the Court, plaintiff has not established that the charter contract constituted transaction of business in New York. It is not alleged, nor is there any proof, that the contract was negotiated in New York, or that there was any solicitation whatsoever in New York. There is a conclusory, unsupported allegation that oil would be delivered in New York, *see* Plaintiff's Memorandum Dated May 2, 1989 at p. 6, but, even if that were true, it would be clearly insufficient to establish the "transaction" of business here. *See, e.g., Loria & Weinhaus v. H.R. Kaminsky & Sons,* 80 F.R.D. 494, 499 (S.D.N.Y.1978) ("it is clear that 'mere shipment' of goods into New York does not amount to a transaction under section 302.") (*citing Kramer v. Vogl,* 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966)).

These foreign corporations, and particularly InterPetrol, did not transact business by "purposely avail[ing] [themselves] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Cutco Industries v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986) (*quoting Hansen v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). *See also, McKee Electric Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967). Even if there were activites which amounted to transacting business, there is nothing like an articulable nexus between those activities and the claim in this lawsuit. *McGowan, supra,* 52 N.Y.2d

at 272, 437 N.Y.S.2d at 645, 419 N.E.2d at 323.

Moreover, there is no allegation that InterPetrol was itself a direct party to the underlying transaction, and jurisdiction would therefore have to be based upon the actions of other entities, which must then be attributed to InterPetrol. In New York, there are two ways in which the acts of an instrumentality may be attributed to another entity for jurisdictional purposes. The first basis is where the entity is a "mere department" of the foreign corporation. The second is where the other entity acts as an agent of the parent corporation. *See, e.g., Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 853, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967).[10]

■ An entity will be a "mere department" of a parent corporation if it is so pervasively controlled that the corporate distinction is more formal than real. *See Taca Int'l Airlines, S.A. v. Rolls–Royce of England, Ltd.,* 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965); *Tokyo Boeki (U.S.A.) Inc. v. SS Navarino,* 324 F.Supp. 361 (S.D.N.Y.1971). In making these evaluations, the relevant factors go beyond mere stock ownership, and include financial interrelationships, the parent's interference in assignment of personnel of the subsidiary, failure to observe corporate formalities, and control by the parent of the subsiduary's day to day activities. *See Volkswagenwerk A.G. v. Beech Aircraft Corp.,* 751 F.2d 117, 120–22 (2d Cir.1984). On the present record, the Court cannot conclusively say that Intertanker or any other domestic corporate subsidiary was a mere department of InterPetrol, and possessed sufficient New York contacts to subject

---

**9.** Plaintiff argues that the pursuit of legal remedies by InterPetrol is "transacting business," and, presumably, that the claim in this suit, which is based upon an arbitration award under the charter contract, somehow arises out of a "scheme" comprised of InterPetrol's unrelated legal pursuits. The Court is not persuaded by these tenuous assertions, either with regard to the required transaction of business, or with the connection to this cause of action.

**10.** The "agency" and "mere department" inquiries are made for jurisdictional purposes un-

der the law of New York. These inquiries are analytically and practically distinct from the merits of a piercing action, although the analysis is obviously related.

A parent may sufficiently utilize a subsidiary to subject it to personal jurisdiction, and yet the corporate veil may ultimately not be pierced at trial. The Court notes that in the present case, the parties dispute which substantive law will govern the piercing action.

InterPetrol to personal jurisdiction here. *See generally, Heller v. Novacor*, 1988 WL 117458, 1988 U.S.Dist. LEXIS 11877 (S.D. N.Y.1988).

█ An "alleged agent must have acted in this state for the benefit of and with the knowledge and consent of the non-resident and the non-resident must exercise some element of control over the agent." *Selman v. Harvard Medical School*, 494 F.Supp. 603, 611 (S.D.N.Y.1980) (*quoting Louis Marx & Co. v. Fuji Seiko Co., Ltd.*, 453 F.Supp. 385, 390 (S.D.N.Y.1978), *aff'd without opinion*, 636 F.2d 1204 (2d Cir. 1980)). Even if InterPetrol sometimes acted through domestic agents, however, there is no evidence that those agents transacted any business in New York which was related in any way to the underlying claim in this lawsuit. Again, as noted above, it has not been established that this claim has any relation to the transaction of business, by InterPetrol, Intertanker, Lehner, or any other entity, in New York.

To summarize, in 1986 InterPetrol was not, itself or through other entities, doing business in New York under § 301. Also, plaintiff has not shown that this claim arises out of business transacted in New York by InterPetrol, or a sufficiently related entity, and jurisdiction is accordingly not proper under § 302.[11]

## 2. FORUM NON CONVENIENS.

█ The final issue before the Court is whether the action should be dismissed under the common law doctrine of *forum non conveniens*. Any *forum non conveniens* inquiry has to begin with analysis of the factors set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *See also, Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981).[12] The fact that this is an admiralty action does not alter the general *forum non conveniens* analysis to be undertaken by the Court. *See Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir.) (*en banc*), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980).

█ The Supreme Court has emphasized the flexibility with which the District Court must approach a *forum non conveniens* determination, and consequently there are no specific circumstances which would require either a grant or denial of the remedy. *Gulf Oil, supra*, 330 U.S. at 508, 67 S.Ct. at 843; *Piper Aircraft, supra*, 454 U.S. at 249, 102 S.Ct. at 262 (*citing Williams v. Green Bay & Western R. Co.*, 326 U.S. 549, 557, 66 S.Ct. 284, 288, 90 L.Ed. 311 (1947)). In considering and balancing the competing concerns in the present case, the Court is not persuaded that dismissal of the action is justified.

Upon an examination of the private interest factors, it is apparent that New York is a convenient forum for the witnesses; the principle witness will be Lehner himself. Although some corporate records may be in Bermuda, the evidence before the Court indicates that it is also possible that some relevant documents are located here in New York. The Court is satisfied that plaintiff's choice of this forum is not fueled by a desire to "seek ... justice blended with

---

11. The conclusion that InterPetrol is not subject to statutory long arm jurisdiction precludes the necessity of an extensive discussion of whether the constitutional requisites for such an exercise of jurisdiction would be met here. The Court notes, however, that the paucity of relevant contacts that InterPetrol had with this forum, and the nature of those contacts, indicates serious doubt that jurisdiction could be maintained over the corporation without offending "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

12. The factors relating to private interests of the litigants include: relative ease of access to sources of proof; cost of obtaining testimony from, and availability of compulsory process for, unwilling witnesses; and other practical problems that make trial of a case easy, expeditious and inexpensive. The public factors bearing on the issue include administrative difficulty flowing from court congestion, interest in having local controversies decided locally, avoidance of unnecessary problems with conflict of laws or application of foreign laws, and unfairness in burdening citizens in an unrelated forum with jury duty. *Piper Aircraft, supra*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

some harassment," *Gulf Oil v. Gilbert, supra,* 330 U.S. at 507, 67 S.Ct. at 842, and the litigants' private interests are not violated by litigation in this Court. The balance of the relevant factors does not tip in favor of the defendants here, much less "strongly" so. *Id.* at 508, 67 S.Ct. at 843.

Similarly, consideration of the public interest elements does not mandate that the action be dismissed. While it is possible that Bermuda law will apply to the merits of the action, it is well settled that this is not a determinative factor. *See, Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir.1981); Fed.R.Civ.P. 41(a)(1). At the commencement of the lawsuit, there was no suitable alternative forum, because Lehner was subject to an outstanding arrest warrant, and could not travel to Bermuda. That situation has now changed, but the existence of an alternative forum does not compel dismissal. Defendants have not shown that the alternative forum in Bermuda would be more convenient than New York.

Finally, defendants argue that the interests of other Intertanker creditors in Bermuda will be jeopardized by the action in this Court. Neither defendants nor the Bermudian liquidators, however, have moved to stay this proceeding, pending resolution of that Bermuda liquidation. The Bermuda liquidators are not pursuing InterPetrol or the debts which plaintiff seeks to secure here. Legitimate creditors of Intertanker will not be impermissibly prejudiced by Andros' pursuit of these claims against third parties, who are not themselves in liquidation.[13]

Defendants have not shown any real prejudice or inconvenience which would arise from litigation in this forum. Defendants have, in fact, actively *initiated* other lawsuits here, including actions which have come before this very Court, as related to the present case. Although the choice of forum by plaintiff, as a non-resident, is not entitled to the same weight that a resident plaintiff would have, the choice of Andros here will not be disturbed. The conception of what constitutes an impermissibly inconvenient forum continues to evolve with modern communication and information management technology. *See, Calavo Growers of California v. Generali Belgium,* 632 F.2d 963, 969 (2d Cir.1980) (Newman, J. concurring), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). In the present case, the Court will not "renounce [its] own jurisdiction", *Gulf Oil v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843, and the action will proceed in this forum.

## CONCLUSION

Defendant InterPetrol's motion to dismiss for lack of personal jurisdiction is granted. Defendant Lehner's motion to dismiss for lack of personal jurisdiction is denied, as is the motion by all defendants to dismiss the case on *forum non conveniens* grounds.

A hearing has been requested by the remaining defendants, and is therefore necessary for determination of the preliminary injunction motion. That hearing will be held promptly; this case must move forward in a more expeditious manner, to ensure justice for all of the parties involved. Counsel for the parties will consult together, and contact chambers within five days of the issuance of this opinion, to permit the scheduling of the preliminary injunction hearing at a mutually convenient date for the parties and the Court.

SO ORDERED.

---

**13.** The district court in *Kempe v. Ocean Drilling & Exploration,* 683 F.Supp. 1064, 1071 (E.D.La. 1988) dismissed an action on *forum non conveniens* grounds, noting that one of the defendants was subject to a liquidation proceeding in Bermuda. That situation, however, presented a much more compelling case than this one for dismissal. Among other factors, the plaintiffs in that case had actually been appointed by a Bermuda court as receivers, to wind up the affairs of the bankrupt defendant, *id.* at 1066.