**UNITED PHOSPHORUS, LTD.,
et al., Plaintiffs,**

v.

**ANGUS CHEMICAL COMPANY,
et al., Defendants.**

**No. 94 C 2078.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 24, 1999.

---

Terence J. Moran, Peter Michael Katsaros, Frederick Scott Rhine, James Eric Vander Arend, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, IL, for plaintiffs.

T. Mark McLaughllin, Andrew Stanley Marovitz, Kaspar J. Stoffelmayr, Mayer, Brown & Platt, Chicago, IL, Stephen Novack, Patrick A. Fleming, Jennifer Lyn Friedes, Novack & Macey, Chicago, IL, for Angus Chemical Co., Angus Chemie, GMBH, Freeman Hughes, Ollie W. Chandler, Lowell Pals, Gary W. Granzow, defendants.

Barrie Laine Brejcha, David G. Wix, Matthew G. Allison, Baker & McKenzie, Chicago, IL, for D.B. Gupta, Lupin Laboratories, Ltd., defendants.

### MEMORANDUM AND ORDER

MANNING, District Judge.

Defendant Lupin Laboratories, Ltd. and D.B. Gupta's renewed motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) is before the court. For the following reasons, the motion is denied.

## I. Background

The plaintiffs in this antitrust action claim that the defendants—Angus Chemical Company and its corporate officers, Freeman Hughes, Ollie Chandler, Lowell Pals, and Gary Granzow (collectively, "Angus"), Angus Chemie GmbH ("Chemie"), and Lupin Laboratories, Ltd. and its officer and owner D.B. Gupta (collectively, the "Lupin defendants")—engaged in various anti-competitive acts to prevent them from entering the United States and world markets for two chemicals, 1–Nitropropane ("1–NP") and 2–Amino–1–Butanol ("AB"). AB is the key ingredient in Ethambutol, a drug used to treat tuberculosis, while 1–NP is the raw material used to make AB.

For the purposes of this order, the court will assume familiarity with its prior decisions: (1) granting the Lupin defendants' first motion to dismiss for lack of personal jurisdiction and permitting the plaintiffs to amend their complaint; and (2) denying the plaintiffs' motion to reconsider. *See United Phosphorus, Ltd. v. Angus Chemical Co.*, No. 94 C 2078, 1996 WL 164394 (N.D.Ill. Apr.2, 1996); *United Phosphorus, Ltd. v. Angus Chemical Co.*, No. 94 C 2078 (N.D.Ill. Mar. 20, 1997) (unpublished order); *see also United Phosphorus, Ltd. v. Angus Chemical Co.*, No. 94 C 2078, 1994 WL 577246 (N.D.Ill. Oct.18, 1994). At this time, the plaintiffs have amended the jurisdictional allegations in their complaint directed at the Lupin defendants and the parties have completed the discovery necessary to determine if personal jurisdiction over the Lupin defendants is proper.

## II. Discussion

### A. Standard for a Motion to Dismiss Under Fed.R.Civ.P. 12(b)(2)

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) based on lack of personal jurisdiction, the court may

consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *See* Fed.R.Civ.P. 12(b). The plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987). In making its determination regarding personal jurisdiction, the court must resolve any factual disputes in the plaintiffs' favor, but must accept the allegations in the plaintiffs' complaint as true only to the extent that they are not controverted by other evidence in the record. The court must also accept uncontested jurisdictional facts presented by the defendants as true. *Connolly v. Samuelson,* 613 F.Supp. 109, 111 (N.D.Ill.1985). With these standards in mind, the court turns to the parties' contentions regarding jurisdiction.

### B. Can the Court Consider Contacts by the Lupin Defendants Which Occurred After the Complaint was Filed?

As a threshold matter, the court must first address whether the Lupin defendants' contacts with Illinois after the filing of the complaint on April 4, 1994 are relevant. The Lupin defendants assert that the clock stopped on the day the complaint was filed, while the plaintiffs claim that all contacts with Illinois, regardless of when they occurred, are relevant. For the purposes of this inquiry, it is important to note that this is a specific jurisdiction case, as the Lupin defendants' contacts with Illinois arise from their alleged involvement in a conspiracy and the Angus defendants. Thus, a brief recap of principles relating to specific jurisdiction is in order.

The central inquiries with respect to specific jurisdiction are whether the defendant purposefully established minimum contacts with the forum state and whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir.1997), *citing Burger King v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "Crucial to the minimum contacts analysis is showing that the defendant 'should reasonably anticipate being haled into court' [in the forum state] because the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities there.'" *Id.* (citations omitted). Factors such as the parties' negotiations, the future consequences contemplated by the parties, the terms of any contract at issue, and the parties' actual course of dealings are relevant and must indicate the kind of purposeful availment that makes litigation in the forum state foreseeable to the defendant. *Id.*

The focus on whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state necessarily implies that only conduct prior to the accrual of the cause of action or, at the very latest, the filing of the lawsuit is relevant. In other words, "purposeful availment" implies that the defendant, as shown by its activities, intended to be amenable to suit in the forum state. Conduct post-dating the filing of a complaint by definition cannot show that, when the defendant engaged in the post-complaint acts purportedly supporting jurisdiction, it intentionally exposed itself to the possibility of an event which had already occurred (the filing of a complaint in the forum state).

This conclusion is supported by *Sportmart, Inc. v. Frisch,* 537 F.Supp. 1254 (N.D.Ill.1982). In that case, Sportmart filed suit against ski and ski boot manufacturers and distributors alleging that they conspired to refuse to accept orders for Rossignol skis and Nordica boots for delivery to Sportmart. One of the defendants—Nordica US—did not commence operations until five months after the alleged conspiracy began. Sportmart nevertheless sued Nordica US, alleging that, after the complaint was filed, it refused to accept Sportmart's orders for boots. The court found that "the relevant time period

for jurisdiction and venue purposes is the time that the cause of action accrued." 537 F.Supp. at 1259. Thus, the court concluded that the post-complaint allegations were "jurisdictionally irrelevant" because they went beyond the conspiracy alleged in the complaint. *Id.*

While *Sportmart* understandably occupies a starring role in the Lupin defendants' briefs, the plaintiffs assert that the Seventh Circuit has subsequently held that all contacts—both pre and post-filing—are relevant, citing to *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir.1996), *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947–48 (7th Cir.1992), and *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1218–20 (7th Cir.1990). They also direct the court to the Supreme Court's decision in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

The Lupin defendants attempt to distinguish these cases by claiming that this is a specific jurisdiction case but that the cited cases address whether general personal jurisdiction (which is based on evidence of continuous and systemic contacts between the defendant and the forum state) exists. *See Dehmlow v. Austin Fireworks*, 963 F.2d at 948 n. 6 (general jurisdiction requires evidence of continuous and systematic contacts with the forum state, while specific jurisdiction "rests on the defendant's contacts with the forum state regarding the transaction underlying [the] litigation"). They also attempt to distinguish the cases by contending that they turn on whether the defendants had the requisite ongoing intent to serve the forum state (*i.e.*, a "stream of commerce" or "intent to serve the forum state" theory). According to the Lupin defendants, because this case deals with contacts arising out of a conspiracy, the "stream of commerce"/"intent to serve the forum state" cases are inapposite.

Both sides' positions are problematic. First, an attempt to distinguish these cases based on the distinction between specific and general jurisdiction is unconvincing, as at least one of the cases cited by the plaintiffs—*Logan Productions, Inc. v. Optibase, Inc.*—unequivocally states that it is a specific jurisdiction case. 103 F.3d at 52. Second, the Lupin defendants' "stream of commerce"/"intent to serve the forum state" distinction is unavailing because the complaint expressly alleges that the conspiracy is ongoing. An ongoing conspiracy is analogous to ongoing contacts with the forum state. This does not spell victory for the plaintiffs, however, as their reading of the Seventh Circuit cases cited in their brief is too broad.

Specifically, the Seventh Circuit has expressly held that "additional contacts" (*i.e.*, contacts above and beyond "the transaction underlying [the] litigation") "may be considered when determining whether the defendant merely placed his product in the stream of commerce, or whether his action was more purposefully directed at the forum state." *Dehmlow v. Austin Fireworks*, 963 F.2d at 948 n. 6. *See also Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d at 53 (the defendant's contacts with the forum state after the event underlying the lawsuit (the sale of a product) are relevant when determining whether the defendant intended to serve the market in the forum state). In other words, the Seventh Circuit has found that contacts after the sale of a product are relevant for personal jurisdiction purposes. *See Dehmlow v. Austin Fireworks*, 963 F.2d at 949 (Ripple, J., dissenting) (stating that only "activity contemporaneous or antecedent to the incident at issue ought to be considered").

This does not mean, however, that *all* subsequent contacts—even those occurring after the complaint is filed—are germane. The Seventh Circuit's decisions in *Logan Productions, Dehmlow, Daniel J. Hartwig Associates*, and the Supreme Court's decision in *Asahi* all hold that contacts occurring after the event underlying the lawsuit are relevant. Importantly, they do not take the extra step of holding that post-

complaint conduct is relevant. For example, in *Dehmlow,* the court considered sales of fireworks occurring after the sale of the fireworks that injured the plaintiff. 963 F.2d at 947–48. Similarly, in *Logan Productions,* the court considered contacts made by the manufacturer of a defective compact disc encoding machine occurring after the sale of the machine. 103 F.3d at 53. Thus, while *Sportmart*'s focus on the time that the cause of action accrued may not be accepted today by the Seventh Circuit, the pendulum has not swung as far in the other direction as the plaintiffs urge. *See Sportmart, Inc. v. Frisch,* 537 F.Supp. at 1259.

■ In this case, the initial conspiracy is comparable to the initial sale of a product, and the subsequent ongoing activities in furtherance of the conspiracy are comparable to the subsequent contacts occurring after the sale of the product. Thus, the court finds that it can consider events occurring after the initiation of the conspiracy. The filing of the complaint, however, stops the clock from running, for three reasons.

First, none of the authority cited by the plaintiffs supports their theory that all contacts, regardless of whether they are pre or post suit, are jurisdictionally relevant. At best, those cases stand for the proposition that contacts after the incident that forms the basis of the complaint are relevant to the extent that the plaintiff alleges a continuing course of action.

Second, the plaintiffs have not cited, and the court has been unable to locate, any authority supporting the proposition that it can exercise jurisdiction over a defendant where the events supporting jurisdiction occurred after the complaint was filed. In other words, jurisdiction attaches (or does not attach) as of the time that an action is filed. *Cf. Metropolitan Life Ins. v. Robertson–Ceco Corp.,* 84 F.3d 560, 569–70 (2d Cir.1996) (in general jurisdiction case, the court "should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed—to assess whether they satisfy the 'continuous and systematic' standard").

Last, but not least, the rules regarding personal jurisdiction are founded on the Due Process Clause, which requires that an individual have "fair warning" that a particular activity may subject it to the jurisdiction of the forum state. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. at 472, 105 S.Ct. 2174. While pre-suit activities may rise to the level of a "fair warning" that a defendant may be haled into a court in the forum state, post-suit activities cannot serve to warn the defendant of an event that has already occurred. The fact that the complaint alleges that the conspiracy continues to this day, therefore, is not jurisdictionally significant.

These conclusions are consistent with the decisions of other courts which have specifically addressed whether the clock stops at the time the complaint is filed (as opposed to whether post-event activities are relevant generally). *See Sportmart, Inc. v. Frisch,* 537 F.Supp. at 1259 (contacts occurring after the filing of the complaint "go beyond the period involved in the complaint and are thus jurisdictionally irrelevant"); *Steel v. United States,* 813 F.2d 1545, 1549 (9th Cir.1987) (to determine whether specific jurisdiction is proper, the court must examine the defendant's contacts with the forum at the time of the events underlying the dispute); *Andros Compania Maritima S.A. v. Intertanker Ltd.,* 714 F.Supp. 669 (S.D.N.Y.1989) (in admiralty case where defendant had contacts with the forum approximately six years prior to the filing of the complaint, the relevant time frame for personal jurisdiction was the time that the summons and complaint were served).

They are also consistent with authority holding that, in the analogous areas of subject matter and appellate jurisdiction, jurisdiction must exist at the time that a suit is filed. *See, e.g., Gossmeyer v. Mc-*

*Donald,* 128 F.3d 481, 487 (7th Cir.1997) (subject matter jurisdiction must exist based on the complaint as it existed at the time the defendant filed its petition for removal); *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 248–49 (7th Cir.1981) (whether an action arose under federal law must be determined as of the time that the complaint is filed as "[j]urisdictional questions are answered by reference to the time of the filing of an action"); *United States v. Rumell,* 642 F.2d 213, 215 (7th Cir.1981) (a federal appellate court's jurisdiction must exist at the time the notice of appeal is filed and cannot be based on later events); *Mann v. City of Tucson, Dep't of Police,* 782 F.2d 790, 794 (9th Cir.1986) (per curiam) (diversity jurisdiction must exist at the time the complaint is filed). For these reasons, the court will consider the Lupin defendants' contacts with Illinois up to April 4, 1994, when the plaintiffs filed suit.

### C. Contacts with Illinois or Contacts with the United States?

The defendants' contacts within the United States are limited to contacts with Illinois. Nevertheless, to clarify the court's prior focus on the defendants' contacts with Illinois, the court will next address whether the Lupin defendant's contacts with Illinois or with the United States generally are germane. This inquiry begins with Fed.R.Civ.P. 4(k)(1)(D), which provides that, "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant ... when authorized by a statute of the United States." The Clayton Act, 15 U.S.C. § 22, authorizes nationwide service of process on corporations. *See, e.g., Harvey v. Price,* 603 F.Supp. 1205, 1208 (S.D.Ill.1985).

Because a federal statute authorizes nationwide service on the corporate Lupin defendant, Lupin Laboratories, Rule 4(k)(1)(D) applies to it. This conclusion is consistent with the Seventh Circuit's requirement that a court must conduct an inquiry under the Due Process Clause under "*Omni Capital International, Ltd v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), in conjunction with Fed.R.Civ.P. 4(k)(1)(A), ... to determine whether the state in which the district court is located is authorized to exercise personal jurisdiction .... unless a federal statute authorizes nationwide service, see Rule 4(k)(1)(D)." *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1201 (7th Cir. 1997). In contrast, either Rule 4(k)(1)(A) or Rule 4(k)(2) is applicable to the individual Lupin defendant, D.B. Gupta, because he obviously is not a corporation and thus is outside the ambit of 15 U.S.C. § 22.

Under Rule 4(k)(1)(D), as well as Rule 4(k)(1)(A) and Rule 4(k)(2), the court must consider whether the Lupin defendants possess sufficient contacts with the United States to satisfy due process. *See Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir.1987); *Paper Systems, Inc. v. Mitsubishi Corp.,* 967 F.Supp. 364, 369 (E.D.Wis.1997); *Miller Pipeline v. British Gas, plc,* 901 F.Supp. 1416, 1421 (S.D.Ind. 1995). Thus, the court turns to this question.

### D. Do the Lupin Defendants' Contacts with the United States Satisfy Due Process?

#### 1. Personal Jurisdiction: Fundamental Principles

■ Under the Illinois long-arm statute, Illinois state courts have general jurisdiction over nonresident defendants "doing business" in Illinois and specific jurisdiction over nonresident defendants if the claims arise from their "transactions" in Illinois. 735 ILCS §§ 5/2–209(a) & (b). The Illinois long-arm statute also contains a "catch-all" provision which allows Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. 735 ILCS § 5/2–209(c). Thus, jurisdiction is coextensive with federal due process requirements. *See, e.g., Dehmlow v. Austin Fireworks,* 963 F.2d at 945. Moreover,

if jurisdiction exists under the "catch-all" provision, a defendant does not have to perform any of the enumerated acts set forth in the remainder of the statute. *Mors v. Williams*, 791 F.Supp. 739, 741 (N.D.Ill.1992).

To determine whether personal jurisdiction over the Lupin defendants is proper, the court must consider: (1) whether the Illinois long-arm statute, 735 ILCS § 5/2–209, grants jurisdiction; and whether this court's assertion of jurisdiction is consistent with (2) the Illinois, and (3) United States Constitutions. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1276. As the Seventh Circuit recently explained, "[b]ecause the Illinois statute authorizes personal jurisdiction to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries— one state and one federal". *Id.; YKK, USA, Inc. v. Baron*, 976 F.Supp. 743, 745 (N.D.Ill.1997).

### a. The State Inquiry

██ With respect to the state inquiry, in Illinois, general jurisdiction principles apply when the case neither arises from nor is related to the defendant's contacts with the forum, and is permissible only if the defendant has "continuous and systematic general business contacts" with the forum. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1277, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The court will not consider general jurisdiction, as the plaintiffs expressly rely on specific jurisdiction.

██ In contrast, specific jurisdiction applies when the court is asserting jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id., citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 416, 104 S.Ct. 1868. The court may exercise specific jurisdiction over the Lupin defendants if they "purposefully established minimum contacts within the forum state" and those contacts

"make personal jurisdiction fair and reasonable under the circumstances." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1277, *quoting Burger King v. Rudzewicz*, 471 U.S. at 476–77, 105 S.Ct. 2174.

██ This case is based on an alleged conspiracy. Thus, for specific jurisdiction purposes, what is commonly referred to as the conspiracy theory of jurisdiction is applicable. Under this theory, a court may assert jurisdiction over all of the co-conspirators, both resident and non-resident, based on their involvement in a conspiracy which occurred within the forum. *See, e.g., Chromium Industries, Inc. v. Mirror Polishing & Plating Company*, 448 F.Supp. 544 (N.D.Ill.1978). To satisfy this standard, the plaintiffs must: (1) make a prima facie factual showing of a conspiracy (i.e., point to evidence showing the existence of the conspiracy and the defendant's knowing participation in that conspiracy); (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in the forum. *Id.; United States v. Sasson*, 62 F.3d 874, 886 (7th Cir.1995). The evidence relating to the conspiracy may be direct or circumstantial. *United States v. Hickok*, 77 F.3d 992, 1005 (7th Cir.1996).

██ As the court has previously noted, if the plaintiff can satisfy the three requirements necessary under the conspiracy theory of jurisdiction, even a foreign defendant with no real contact with the forum state and no direct business relations tied to the forum state would be subject to the court's jurisdiction. It is important to note, however, that due process requires, at a minimum, "a factual showing of a conspiracy and a factual connection between the acts of the conspirator who was present in the jurisdiction and the conspirator who was absent." *Chromium Industries, Inc. v. Mirror Polishing &*

*Plating Co., Inc.,* 448 F.Supp. at 553.[1] Simply alleging that a corporate defendant participated in a conspiracy and that another member of the conspiracy committed a tort in the forum state is not enough to reach the defendant who is an absent co-conspirator. *Id.* at 552.

### b. The Federal Inquiry

 With respect to the federal inquiry, federal due process requires that the exercise of personal jurisdiction over a nonresident defendant be reasonable. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Pertinent factors include: (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; (5) the extent to which the claim is related to the defendant's local activities; and (6) avoidance of multiplicity of suits on conflicting adjudications. *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. at 115, 107 S.Ct. 1026; *Burger King Corp. v. Rudzewicz,* 471 U.S. at 472–73, 105 S.Ct. 2174. Federal due process also requires the nonresident defendant to have "minimum contacts" with the forum state and to have "purposefully availed itself" of the privilege of conducting activities within the forum state. *International Shoe Co.,* 326 U.S. at 310, 66 S.Ct. 154; *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Dehmlow v. Austin Fireworks,* 963 F.2d at 945.

### 2. The Lupin Defendants' Contacts— The State Inquiry

 In essence, the plaintiffs contend that the evidence shows that the Lupin defendants conspired in Illinois and performed substantial acts in Illinois in fur-

therance of that conspiracy. In contrast, the Lupin defendants assert that Angus' prosecution of the Cook County lawsuit cannot be attributed to them, and that other correspondence between Lupin and Angus reflects legitimate business activities between the two companies. The evidence regarding these arguments is under seal. Thus, the court must undertake the difficult task of explaining why the facts in this case do or do not support the exercise of personal jurisdiction while only obliquely referring to those facts. *See Pepsico, Inc. v. Redmond,* 46 F.3d 29, (7th Cir.1995) (Easterbrook, J., in chambers) "[t]he district judge should prepare an opinion suitable for general circulation, rather than preparing an opinion on the assumption that the whole document will remain secret and then releasing copies with sentences and paragraphs blotted out, as if Glavlit (the Soviet Union's censorship bureau) has got its hands on the document".

 Have the plaintiffs made a prima facie factual showing of a conspiracy (*i.e.,* have they pointed to evidence showing the existence of the conspiracy and the defendants' knowing participation in that conspiracy), and have they alleged specific facts warranting the inference that the defendant was a member of the conspiracy? The court finds that the answer to these questions is "yes." The court also takes this opportunity to reiterate that, in making this determination, it must construe all facts relating to jurisdiction in favor of the plaintiffs, including disputed or contested facts. *See, e.g., Miller Pipeline Corp. v. British Gas, plc,* 901 F.Supp. at 1423.

 First, it is true that "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust

---

1. The Lupin defendants contend that the absent co-conspirator's acts in furtherance of the conspiracy must also satisfy the "transacting business" prong of 15 U.S.C. § 22, citing to *Weinstein v. Norman M. Morris Corp.,* 432

F.Supp. 337, 344 (E.D.Mich.1977). For the reasons discussed above, the court disagrees, as personal jurisdiction principles, rather than § 22, circumscribe this court's jurisdiction.

conspiracy." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *citing Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Nevertheless, it is also true that, even if conduct could potentially be consistent with permissible competition, a plaintiff may still make a prima facie showing of a conspiracy if it establishes that the "inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed [the defendants]." *Id.* The court finds that the evidence presented by the plaintiffs, including the letters previously presented by the plaintiffs (*i.e.,* the July 23, 1991 telex from Hughes to Granzow and the August 22, 1991 telex from Hughes to Gupta), satisfy this standard. To the extent that the court's prior opinions rely on only the first portion of *Matsushita* quoted above, they are too narrowly drawn and are, therefore, revisited.

Second, the Seventh Circuit instructs us that, to show the existence of a conspiracy indirectly, a plaintiff must demonstrate that a defendant is acting in a way that is inconsistent with unilateral decision making. *Illinois Corporate Travel, Inc. v. American Airlines,* 806 F.2d 722, 726 (7th Cir.1986). In other words, the plaintiff must show that "the defendant acted in a way that, but for a hypothesis of joint action, would not be in its own interest." *Id.* The court finds that the plaintiffs have pointed to documentation memorializing the relationship between Angus and Lupin that supports the inference that, but for an agreement, the Lupin defendants would not have acted as they did. Legitimate business dealings do not include discussions regarding the need to keep competitors from entering the market and the means by which this goal may be attained.

Third, the court rejects the Lupin defendants' characterization of their relationship with Angus. The letters previously considered by the court as well as the additional correspondence tendered by the plaintiffs support an inference that the Lupin defendants and Angus were conspiring to prevent other entities from entering the AB market. Undoubtedly, evidence of lawful relationships between alleged coconspirators is insufficient to support an inference of conspiracy. *See, e.g., Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. at 762, 104 S.Ct. 1464. The evidence in this case, however, supports an inference that the defendants' relationship was based on more than arms-length business dealings.

Fourth, the fact that the evidence does not show that the Lupin defendants knew about the Cook County lawsuit before it was filed does not doom the plaintiffs' case against them. The Seventh Circuit does not require all coconspirators to agree on every detail to be taken in furtherance of their common goals. Instead, "[t]o be liable as a coconspirator you must be a voluntary participant in a common venture ... you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are. It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988). The common goal in this case—to limit competition in the AB market—is apparent from the record. The evidence supports an inference that Angus and Lupin understood the objectives and agreed to further them. Even if they may have also engaged in other legal activities together, the activities in support of the common goal are sufficient to support an inference that the Lupin defendants were part of the alleged conspiracy.

This brings the court to the final element necessary to satisfy the conspiracy theory of jurisdiction: whether Angus committed a tortious act pursuant to the conspiracy in the forum. Based on the arguments and evidence previously submitted by the parties, the court directed

the plaintiffs to allege facts sufficient for the court to find a link between the alleged actions of the Lupin defendants and the lawsuit filed in Cook County allegedly in furtherance of the conspiracy. Despite the Lupin defendants' focus on the Cook County lawsuit in its briefs, the plaintiffs' current arguments in support of the existence of a tortious act in the forum are based on more than the existence of that lawsuit.

Specifically, the plaintiffs direct the court's attention to evidence supporting their claim that Gupta and Lupin officials met in Illinois and that the Lupin defendants sent letters into Illinois for the purpose of furthering the alleged conspiracy. The court finds that, regardless of the dispute regarding the Lupin defendants' involvement in the Cook County lawsuit or the presence of subsequent explanations for that suit (which are not necessarily inconsistent with the existence of a conspiracy), the plaintiffs have adequately shown, based on these additional contacts, that the exercise of personal jurisdiction under state law is proper. This is because those additional contacts show that the Lupin defendants purposefully took actions in Illinois which make the exercise of personal jurisdiction fair and reasonable. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1277.

### 3. The Lupin Defendants' Contacts— The Federal Inquiry

■ Because the court agrees with the plaintiffs that the evidence supports an inference that the Lupin defendants conspired in Illinois and performed substantial acts in Illinois in furtherance of that conspiracy, the court must turn to whether the exercise of personal jurisdiction over the Lupin defendants is reasonable under federal law. As noted above, federal due process requires that: (1) the exercise of personal jurisdiction over a nonresident defendant be reasonable; and (2) the defendant have "minimum contacts" with the forum state and purposefully avail itself of the privilege of conducting activities within the forum state. *See, e.g., International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. 154.

The court first examines the well-known factors first set forth in *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. at 115, 107 S.Ct. 1026, and *Burger King Corp. v. Rudzewicz*, 471 U.S. at 472–73, 105 S.Ct. 2174, which are summarized above. First, Illinois unquestionably has an interest in providing a forum to plaintiffs who were allegedly injured by anti-competitive activities in Illinois. Second, the burden of defending a suit in Illinois on the defendant and the relative burden of prosecution elsewhere on the plaintiffs cancel each other out. While the Lupin defendants clearly do not wish to be involved in litigation in this forum, they chose to do business here and cannot be heard to complain that litigation arising out of those contacts is inconvenient. *See Lisak v. Mercantile Bancorp*, 834 F.2d 668, 671 (7th Cir.1987) (a defendant may not "demand that the court applying the law of the United States be conveniently located"). Third, the plaintiffs' claims are based solely on the Lupin defendants' local activities.

■ Next, the court considers whether the Lupin defendants' contacts satisfy due process. *See, e.g., International Shoe Co.*, 326 U.S. at 310, 66 S.Ct. 154. This requirement is satisfied when the defendant has purposefully directed its activities to the forum state or personally derived economic benefits from the activities with the forum state. *Id.* It is not satisfied where only single or occasional acts are related to the forum, but their nature, quality, and the circumstances of their commission create only an attenuated connection to the forum. *Id.* at 318, 66 S.Ct. 154. For the reasons noted above, the court finds that the contacts satisfy due process.

Finally, the court considers whether the exercise of jurisdiction in Illinois over the Lupin defendants would violate traditional notions of fair play and substantial justice.

*See, e.g., Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d at 53. Because the court has found that the allegations in the complaint and the evidence proffered by the plaintiffs support an inference that the Lupin defendants participated in a conspiracy in Illinois, the exercise of jurisdiction would not violate traditional notions of fair play and substantial justice. For these reasons, the court finds that the exercise of personal jurisdiction over the Lupin defendants is proper. Accordingly, the Lupin defendants' motion to dismiss is denied.

### III. Conclusion

The Lupin defendants' motion to dismiss the plaintiffs' second amended complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) [342–1] is denied.